UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

CRISTINO CONTRERAS,                    :

            Petitioner,         :    07 Civ. 5532 (DAB)(HBP)

  -against-                            :    REPORT AND
                                            RECOMMENDATION
JOSEPH T. SMITH,                       :

            Respondent.          :

-----------------------------------X

       PITMAN, United States Magistrate Judge:

       TO THE HONORABLE DEBORAH A. BATTS, United States

District Judge,

I.  Introduction

       Petitioner Cristino Contreras seeks, by his pro se

petition, a writ of habeas corpus pursuant to 28 U.S.C. § 2254

vacating a judgment of conviction imposed on July 13, 2000 after

a jury trial, by the Supreme Court of the State of New York, New

York County (Wittner, J.), for criminal possession of a con-

trolled substance in the first degree (N.Y. Penal L.

§ 220.21(1)), criminal possession of a controlled substance in

the third degree (N.Y. Penal L. § 220.16(1)), and conspiracy in

the second degree (N.Y. Penal L. § 105.15).  Pursuant to that

judgment, petitioner was sentenced to an indeterminate term of

imprisonment of twenty-five years to life for criminal possession of a controlled substance in the first degree, a concurrent indeterminate term of eight and one-third to twenty-five years for criminal possession of a controlled substance in the third degree, and a consecutive indeterminate term of three to nine years for conspiracy in the second degree.  Petitioner is presently on conditional parole in order to be deported.

For the reasons set forth below, I respectfully recommend that the petition be denied.

II.  Facts

A.  Facts Giving Rise to
    Petitioner's Conviction

From March to May of 1997, the Drug Enforcement Administration Task Force surveilled petitioner and his associates and conducted court-ordered monitoring of the telephone lines assigned to Universal Parking Garage ("Universal Parking") and Tamayo Automotive Repair Shop ("Tamayo"), both owned by petitioner.  Officers also monitored petitioner's cellular telephone and beeper, and the beepers of his two brothers (Trial Transcript ("Tr.") at 103-105).[1]  Throughout the investigation, trained Task

---

[1]The beeper belonging to Sterling Contreras was intercepted for only one month during this time period (Tr. at 105).

Force officers interpreted what they understood to be coded conversations among the organization's members and determined that the members were arranging for the transportation and purchase of cocaine.

These officers' interpretations, as well as other evidence offered at trial, established petitioner's leadership role in the drug trafficking organization which often used Universal Parking as a storage facility for cocaine, while Tamayo was used both as a legitimate auto-repair business and as a call center for narcotics transactions (Tr. at 312-313, 319-320, 408). Evidence gathered by the Task Force also established that petitioner's organization included his brother, Jorge Contreras, who executed petitioner's orders, Fremio Peguero, who used a tractor-trailer to transport money and cocaine between Miami and New York, and Venezuelan residents Jose Antonio Vasquez, Robinson Martinez and Ricardo Solano, who supplied petitioner with cocaine (Tr. at 302, 1437-39). The Task Force's investigation tracked the illegal activities of these members, beginning with the petitioner's payment of a substantial sum to his Venezuelan cocaine suppliers and ending with petitioner's face-to-face meeting with these suppliers in New York.

In the early part of their investigation, officers gathered evidence of petitioner's arranging for the transfer of a

large payment to his Venezuelan suppliers.  On March 19, 1997, petitioner used the telephone at Tamayo to inform Solano that he had not yet found a way to transport the substantial sum of money that he owed (Tr. at 517-18, 531-3).  Solano advised petitioner that he could avoid federal reporting requirements of large wire transfers by sending smaller amounts to several different individuals, whose names Solano provided (Tr. at 518-30, 532-39, 585-87).

Petitioner led the New York members in executing this transfer in the manner prescribed by his suppliers.  On April 23, 1997, Jorge called an unidentified woman to request that she contact the wire agency to determine the status of the wire transfer (Tr. at 561-62, 569).  After learning that the money had mistakenly been sent to the Dominican Republic instead of Venezuela, Jorge sought instruction from petitioner (Tr. at 564, 569-72).  Petitioner informed Jorge that he would provide the names of the intended recipients in person (Tr. at 565-66).  Petitioner and his associates then proceeded to exchange multiple calls to clarify the names of these recipients and the status of the transfer (Tr. at 567-68, 572-80, 583-84).  The next day, Solano called Jorge to report that the transfer had been successfully made (Tr. at 580-81, 584).

Petitioner subsequently began discussing additional cocaine purchases with his suppliers.  On May 5, 1997, petitioner informed Solano that he was working on an arrangement to purchase drugs from others in Venezuela.  Solano, however, urged petitioner that he had cocaine "in [his] hands" (Tr. at 609-11, 614-15).  Petitioner decided to continue to buy cocaine from Solano and his associates, discussing with him a possible future purchase of three hundred kilograms of cocaine and making arrangements for an immediate purchase of cocaine in exchange for $707,000.  Petitioner planned to hide the $707,000 and a money counting machine in a car that Peguero would drive to Miami to make this exchange (Tr. at 611-12, 615, 620-27, 637-43, 646, 648, 1445, 1448).  Thereafter, petitioner spoke with Martinez to arrange for two women to act as couriers in this transaction (Tr. at 653-55, 661-665, 669-70, 672-77).

Task Force officers then observed Peguero preparing to travel to Miami.  At 8:01 p.m. on May 21, 1997, law enforcement officers intercepted Peguero using his cellular telephone to call Universal Parking five minutes before a burgundy tractor-trailer drove inside.  The trailer exited at 11:32 p.m. (Tr. at 856-57, 860, 898-900).  On May 23, 1997, petitioner informed Peguero, who was presumably in or near Miami, that the exchange of money and cocaine was scheduled for the following day (Tr. at 682-84, 716-

19, 1435).  Petitioner then spoke to Vasquez to arrange for the suppliers to come to New York so that they could plan a subsequent narcotics transaction in person (Tr. at 727, 732-34, 743-44).

On May 24, 1997, after numerous calls between the participants in petitioner's organization, Vazquez informed petitioner that "they" gave him money the night before, and that Peguero received one hundred and thirteen kilograms of cocaine in return (Tr. at 760, 767-69).  Members of the Task Force deduced from these conversations that Peguero would soon be driving a shipment of cocaine from Miami to New York (Tr. at 925-26).

When all participants were located in New York, officers began an initiative to arrest each of them.  Officers believed that Peguero had returned on May 26, 1997 when they observed a burgundy tractor-trailer again arriving at Universal Parking.  Shortly thereafter, Jorge called petitioner to inform him that he would transfer the newly acquired cocaine into other cars in the garage (Tr. at 782-84, 860-61, 913, 985-86).  Task Force officers arrested Peguero when he left Universal Parking later that day (Tr. at 938-39, 986, 1059).  Officers then intercepted a call from Peguero's mother to Jorge in which she expressed fear that Peguero was arrested while possessing drugs or

money (Tr. at 944-47, 949-50).  Jorge was arrested following this
call (Tr. at 951-54, 1315).

     That afternoon, Task Force officers followed petitioner
as he left his home and picked up Vasquez, Martinez and Solano in
a van.  Shortly thereafter, officers placed them all under arrest
(Tr. at 1001-04, 1026, 1038-39, 1041, 1050-51).  During the
arrest, officers recovered a black plastic bag from underneath
the driver's seat containing $20,000, $4,000 from Martinez's
pants pocket, $5,751 from Solano's pocket and a briefcase con-
taining two pagers, an airline ticket stub in Vasquez's name from
Caracas to Miami, Amtrak tickets for Vasquez and Martinez from
Miami to New York, a notebook, and business cards bearing the
contact information for petitioner and others involved in the
narcotics transactions (Tr. at 1004, 1007-08, 1024, 1041-46,
1052-53, 1278-79, 1284-85, 1289-92, 1407-19, 1447-48).  Officers
also recovered petitioner's cellular telephone and beeper, which
had been among the subjects of the monitoring order (Tr. at
1398).

     After obtaining a search warrant, the Task Force
searched Universal Parking (Tr. at 1086-87, 1223, 1320-21).
Inside the trunk of an Acura Legend, officers recovered two
kilograms of cocaine, three guns, a digital scale and six boxes
of ammunition (Tr. at 1163-65, 1203-05, 1212).  Inside the trunk

of a red Buick, officers recovered six plastic bags containing
one hundred and thirteen "bricks," or kilograms, of cocaine (Tr.
at 1140-42, 1148, 1170-71, 1204, 1350-51).  Officers reported
that the trunk reeked of rotten fish, which they believed was
meant to conceal the scent of cocaine from police dogs (Tr. at
1141, 1155-56, 1171, 1351-52).  The Task Force later discovered
that the Buick was registered to Luis Mendoza (Tr. at 1324-25).

The officers also recovered an electronic money coun-
ter, notebooks, and other paperwork from the Universal Parking
office (Tr. at 1240, 1242-44, 1333, 1345-46).  Task Force offi-
cers later determined that these notebooks, as well as those
taken from Vasquez's briefcase, contained records of drug trans-
actions (Tr. at 1473-1521, 1602-1605).

B.  Petitioner's Trial

At trial, the prosecution's case largely consisted of
the testimony of Task Force members concerning the foregoing
events.  Several officers, including Detectives Perez and
Dersarkissian, testified to the meaning of coded conversations
among petitioner and his associates concerning their narcotics
transactions (Tr. at 83, 392).

Petitioner disputed the officers' interpretation of
these communications.  He testified that his business included

8

sending spare automobile parts to Venezuela, but that he did not keep an accounting of the money received from the sales (Tr. at 1811-12, 1862-63, 1896-98).  As part of this business, petitioner testified that he often shipped car parts in a truck to Miami where his Venezuelan customers would unload them and arrange for further transportation (Tr. at 1862-65, 1866-67, 1894-96).  These customers, who included Vasquez and Solano, would determine the amount of potential profit to be made from petitioner's auto parts, and then send petitioner his share (Tr. at 1812, 1894).  Petitioner also testified that these transactions were negotiated primarily in person and were almost never discussed over the telephone (Tr. at 1867-71).

Generally, petitioner testified that he either did not remember events and conversations observed by Task Force officers (Tr. at 1835-36, 1843-51, 1859-60, 1880-81, 1891-93, 1916-17, 1919-22), or that they were related to his automobile supply business (Tr. at 1812-15, 1844-48, 1858, 1871-79, 1882-88, 1893-1907).  With respect to the cocaine and narcotics paraphernalia found during his arrest and at Universal Parking, petitioner testified that he was unaware of any drug-related activity at the garage, and that none of the recovered drugs belonged to him (Tr. at 1814-15).

C.   Post-Conviction Proceedings

Petitioner, assisted by counsel, appealed his convic-
tion to the Appellate Division of the Supreme Court, First
Department.  In this appeal, petitioner asserted five claims:
(1) the testimony of Detective Perez, who testified as an expert
concerning the meaning of coded conversations, usurped the fact-
finding role of the jury and should have been excluded (Appel-
lant's Brief, dated July 12, 2004, attached to Declaration in
Opposition to the Petition for a Writ of Habeas Corpus ("Decl. in
Opp'n") as Ex. A ("Appellant's Br."), at 21-30); (2) a conflict
of interest existed between petitioner's counsel and that of his
brother because both were affiliated with the same law firm
(Appellant's Br. at 30-36); (3) the Trial Court violated peti-
tioner's right to a fair trial by failing to admit the exculpa-
tory affidavit of Luis Mendoza (Appellant's Br. at 36-39); (4)
the Trial Court improperly denied petitioner's motion to suppress
pen register information due to lack of probable cause (Appel-
lant's Br. at 40-45) and (5) petitioner's sentence was excessive
(Appellant's Br. at 45-50).

On April 27, 2006, the Appellate Division affirmed
petitioner's conviction.  People v. Contreras, 28 A.D.3d 393,
393-94, 816 N.Y.S.2d 10, 11-12 (1st Dep't 2006).  Specifically,

10

the Appellate Division held that Detective Perez was properly
qualified as an expert and that his testimony did not usurp the
fact-finding role of the jury, that petitioner's counsel did not
have a conflict of interest, that the Trial Court properly
excluded Mendoza's affidavit and that there was no basis for
reducing petitioner's sentence.  People v. Contreras, supra, 28
A.D.3d at 394, 816 N.Y.S.2d at 11-12.  The Appellate Division
also held that "[d]efendant's suppression argument and his
constitutional claims regarding the admission of the expert
testimony and the exclusion of the declaration against penal
interest are unpreserved and we decline to review them in the
interest of justice.  Were we to review these claims, we would
reject them."  People v. Contreras, supra, 28 A.D.3d at 394, 816
N.Y.S.2d at 12.

On May 27, 2006, petitioner sought leave to appeal to
the New York Court of Appeals (Application to Appeal of Cristino
Contreras to the Honorable Judith Kaye, dated May 27, 2006,
attached to the Decl. in Opp'n as Ex. D ("First Appl. to Ap-
peal"), at 1).  In his letter, petitioner discussed only his
claim that Detective Perez improperly testified as a fact and
expert witness, confusing the jurors and encroaching upon their
role (First Appl. to Appeal at 1-3).  Petitioner noted that "[i]n
support of this application, [he] relies on the briefs he filed

11

in the Appellate Division, copies of which are enclosed herewith, along with a copy of the People's Brief and the Appellate Division's decision," but he did not discuss any other claims in his letter (First Appl. to Appeal at 3).  The New York Court of Appeals denied petitioner's application without opinion on September 13, 2006.  People v. Contreras, 7 N.Y.3d 847, 847, 823 N.Y.S.2d 776, 776, 857 N.E.2d 71 (2006).

On July 12, 2006, petitioner filed in the Appellate Division a Notice of Motion for an Application for a Writ of Error Coram Nobis and an Application in Support of that writ, claiming that his appellate counsel had been ineffective (Notice of Motion and Application in Support for a Writ of Error Coram Nobis, dated July 12, 2006, attached to Appendix in Support for Federal Writ of Habeas Corpus as Ex. G ("Coram Nobis Appl.")). Petitioner based this application on his appellate counsel's failure to argue that the evidence against petitioner was insufficient (Coram Nobis Appl. at 2-3).  The court denied this application without opinion on January 18, 2007 (Order, dated January 18, 2007, attached to Decl. in Opp'n as Ex. H, at 1).

Thereafter, petitioner sought leave to appeal this order to the New York Court of Appeals, arguing only that he had been denied the effective assistance of appellate counsel (Application to Appeal of Cristino Contreras to the Honorable Judith

Kaye, dated February 7, 2007, attached to Decl. in Opp'n as Ex. I ("Second Appl. to Appeal"), at 1-2).   Petitioner again enclosed copies of the briefs filed in the Appellate Division, but made no mention of any other claims in his letter (Second Appl. to Appeal at 2).   The New York Court of Appeals denied this application without opinion (Certificate Denying Leave, dated March 30, 2007, attached to Decl. in Opp'n as Ex. J, at 1).

Petitioner subsequently filed the present pro se petition for a writ of habeas corpus asserting four claims:  (1) Detective Perez's testimony exceeded its proper bounds and should have been excluded (Petition for a Writ of Habeas Corpus, dated May 14, 2007 (Docket Item 1), ("Petition") at 9); (2) the joint representation of petitioner and his brother by the same law firm deprived petitioner of the effective assistance of conflict-free counsel (Petition at 9); (3) the Trial Court improperly excluded an affidavit which potentially exculpated petitioner (Petition at 9) and (4) appellate counsel was ineffective for failing to challenge the legal sufficiency of the prosecution's evidence (Petition at 9).

13

III.  <u>Analysis</u>

    A.   Exhaustion and
          <u>Procedural Bar</u>

        1.  Applicable
           <u>Legal Principles</u>

It is fundamental that a state prisoner seeking to vacate his conviction on the ground that his federal constitutional rights were violated must first exhaust all available state remedies.  28 U.S.C. § 2254(b); <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971); <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 808 (2d Cir. 2000).

> If anything is settled in habeas corpus jurisprudence, it is that a federal court may not grant the habeas petition of a state prisoner "unless it appears that the applicant has exhausted the remedies available in the courts of the State; or that there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."  28 U.S.C. § 2254(b)(1).

<u>Aparicio v. Artuz</u>, 269 F.3d 78, 89 (2d Cir. 2001).

A two-step analysis is used to determine whether a claim has been exhausted:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. . . .
>
> Second, having presented his federal constitutional claim to an appropriate state court, and having

14

> been denied relief, the petitioner must have utilized
> all available mechanisms to secure [state] appellate
> review of the denial of that claim.

Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981) (citations
omitted), overruled on other grounds, Daye v. Attorney Gen., 696
F.2d 186, 191 (2d Cir. 1982) (en banc).  See also Baldwin v.
Reese, supra, 541 U.S. at 29; McKethan v. Mantello, 292 F.3d 119,
122 (2d Cir. 2002), quoting Ramirez v. Attorney Gen., 280 F.3d
87, 94 (2d Cir. 2001); accord Powell v. Greiner, 02 Civ. 7352
(LBS), 2003 WL 359466 at *1 (S.D.N.Y. Feb. 18, 2003) (Sand,
D.J.); Alston v. Senkowski, 210 F. Supp. 2d 413, 417 (S.D.N.Y.
2002) (Stein, D.J.); Boyd v. Hawk, 94 Civ. 7121 (DAB), 1996 WL
406680 at *3 (S.D.N.Y. May 31, 1996) (Batts, D.J.).

   To satisfy the first step of the exhaustion test, a
habeas petitioner must fairly present his federal claim to the
state courts.  Anderson v. Harless, 459 U.S. 4, 6 (1982); Cox v.
Miller, 296 F.3d 89, 99 (2d Cir. 2002); Galarza v. Keane, 252
F.3d 630, 638 (2d Cir. 2001); Daye v. Attorney Gen., supra, 696
F.2d at 191.  In Daye v. Attorney Gen., supra, 696 F.2d at 194,
the Court of Appeals set forth the methods by which a federal
claim can be fairly presented to a state court where there has
been no express reliance on a provision of the federal Constitu-
tion:

> [T]he ways in which a state defendant may fairly pres-
> ent to the state courts the constitutional nature of
> his claim, even without citing chapter and verse of the
> Constitution, include (a) reliance on pertinent federal
> cases employing constitutional analysis, (b) reliance
> on state cases employing constitutional analysis in
> like fact situations, (c) assertion of the claim in
> terms so particular as to call to mind a specific right
> protected by the Constitution, and (d) allegation of a
> pattern of facts that is well within the mainstream of
> constitutional litigation.

See also Strogov v. Attorney Gen., 191 F.3d 188, 191 (2d Cir.

1999) (a habeas petitioner has fairly presented his claim when he

or she has "informed [the State] courts of 'all the essential

factual allegations' and 'essentially the same legal doctrine

[asserted] in [the] federal petition'") (citation omitted).

To satisfy the second step of the analysis, "a peti-

tioner must present his federal constitutional claims to the

highest court of the state before a federal court may consider

the merits of the petition." Grey v. Hoke, 933 F.2d 117, 119 (2d

Cir. 1991), citing Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir.

1990) (per curiam); see also O'Sullivan v. Boerckel, 526 U.S.

838, 847-48 (1999).  Exhaustion requires that a prisoner must

even pursue discretionary state appellate remedies before he can

raise a claim in a habeas corpus proceeding.  Baldwin v. Reese,

supra, 541 U.S. at 29; O'Sullivan v. Boerckel, supra, 526 U.S. at

846-48.

16

Unexhausted claims are deemed exhausted if the peti-
tioner no longer has any remedy available in the state courts.
Gray v. Netherland, 518 U.S. 152, 161-62 (1996); Nevarez v.
Artuz, 99 Civ. 2401 (LBS), 2000 WL 718450 at *3 (S.D.N.Y. June 5,
2000) (Sand, D.J.); Hurd v. Stinson, 99 Civ. 2426 (LBS), 2000 WL
567014 at *7 (S.D.N.Y. May 10, 2000) (Sand, D.J.).

> This apparent salve, however, proves to be cold comfort
> to most petitioners because it has been held that when
> "the petitioner failed to exhaust state remedies and
> the court to which the petitioner would be required to
> present his claims in order to meet the exhaustion
> requirement would now find the claims procedurally
> barred," federal habeas courts also must deem the
> claims procedurally defaulted.  Coleman v. Thompson,
> 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 115 L.Ed.2d 640
> (1991).

Aparicio v. Artuz, supra, 269 F.3d at 90.

In the absence of a showing of cause for and prejudice
from the failure to raise the claim in conformity with state
procedural requirements, or a fundamental miscarriage of justice,
such a claim, although deemed exhausted, will be forfeited and
barred from serving as the basis for habeas relief.

> Where a petitioner has failed to present his or
> her federal claims to the state courts in accordance
> with state procedural requirements, and no longer has
> recourse to state review, he or she will be found to
> have met the exhaustion requirement of 28 U.S.C. §
> 2254(b); however, the claims will  be subject to proce-
> dural bar in this court.  See Coleman v. Thompson, 501
> U.S. 722 (1991); Castille v. Peoples, 489 U.S. 346, 350
> (1989); Teague v. Lane, 489 U.S. 288, 297-98 (1989).
> If there is such a procedural bar, the claim cannot be

17

> heard absent a showing of cause for the procedural
> default and prejudice.  <u>Wainwright v. Sykes</u>, 433 U.S.
> 72 (1977).

<u>Norwood v. Hanslmaier</u>, 93 CV 3748 (NG), 1997 WL 67669 at *2

(E.D.N.Y. Feb. 11, 1997); <u>accord</u> <u>Parker v. Ercole</u>, 582 F. Supp.

2d 273, 290 (N.D.N.Y. 2008); <u>Garner v. Superintendent of Upstate</u>

<u>Corr. Fac.</u>, No. 9:01-CV-0501 (LEK/DEP), 2007 WL 2846907 at *12

(N.D.N.Y. Sept. 26, 2007).

In addition to the procedural bar that can result from

a failure to exhaust a claim in accordance with state law, a

habeas petitioner's constitutional claim can be procedurally

barred if it has not been asserted in state court proceedings in

accordance with state procedural requirements and the state

courts rely on that violation of state procedural requirements to

reject the claim.  As the Court of Appeals for the Second Circuit

has explained:

> The independent and adequate state ground doctrine
> first arose in the context of direct appeals to the
> Supreme Court from final judgments of the state courts.
> Under that doctrine the Supreme Court "will not review
> a question of federal law decided by a state court if
> the decision of that court rests on a state law ground
> that is independent of the federal question and ade-
> quate to support the judgment."  <u>Coleman v. Thompson</u>,
> 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640
> (1991).  Moreover, "[t]his rule applies whether the
> state law ground is substantive or procedural."  <u>Id</u>.

\*      \*      \*

The doctrine also applies in the context of fed-
eral courts reviewing applications for a writ of habeas
corpus . . . .  [I]nvoking principles of comity and
federalism . . . federal habeas courts faced with an
independent and adequate state ground of decision defer
in the same manner as does the Supreme Court on direct
review.

Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); see also Beard

v. Kindler, --- U.S. ---, ---, 130 S.Ct. 612, 614 (2009) ("A

federal habeas court will not review a claim rejected by a state

court if the decision of [the state] court rests on a state law

ground that is independent of the federal question and adequate

to support the judgment.") (inner quotations omitted); Cone v.

Bell, --- U.S. ---, --- 129 S.Ct. 1769, 1780 (2009) (same);

Bierenbaum v. Graham, No. 08-1375-pr, 2010 WL 2036951 at *9 (2d

Cir. May 25, 2010) (same); Cotto v. Herbert, 331 F.3d 217, 238-39

(2d Cir. 2003); Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002),

citing Coleman v. Thompson, supra, 501 U.S. at 729-31 ("[I]t is

settled law that an independent and adequate state law ground for

a state court conviction cannot be disturbed on habeas."); Brown

v. State of New York, 04-CV-1087 (NG)(VVP), 2006 WL 3085704 at *2

(E.D.N.Y. Oct. 30, 2006) ("When a habeas corpus petitioner

defaults a federal claim in state court . . . by failing to

preserve the claim for state appellate review . . . , the inde-

pendent and adequate state ground doctrine bars federal habeas

corpus review."); Rivera v. Moscicki, 03 Civ 5810 (SAS), 2005 WL

2347840 at *2 (S.D.N.Y. Sept. 22, 2005) (Scheindlin, D.J.) ("A federal court generally may not review a state court decision that expressly relies on a procedural default as an independent and adequate state ground for dismissal.").

Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar:

> In Harris [v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)], the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263, 109 S.Ct. 1038 (internal quotation marks omitted). We apply the Long/Harris presumption to the last "reasoned state judgment" . . . . See Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000). See also Galarza v. Keane, supra, 252 F.3d at 637 ("We have repeatedly stated that in order for federal habeas review to be procedurally barred, a state court must actually have relied on a procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion.").

As long as the state court relies on a procedural bar as an independent basis for its decision, a claim will be proce-

durally barred on federal habeas review even where a state court
addresses the merits of the claim in the alternative.  As the
Court of Appeals for the Second Circuit has noted:

> This court has held that "federal habeas review is
> foreclosed when a state court has expressly relied on a
> procedural default as an independent and adequate state
> ground, even where the state court has also ruled in
> the alternative on the merits of the federal claim."
> Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990);
> Harris, 489 U.S. at 264 n.10, 109 S.Ct. at 1044 n.10
> ("[A] state court need not fear reaching the merits of
> a federal claim in an alternative holding"); Wedra v.
> Lefevre, 988 F.2d 334, 338-39 (2d Cir. 1993).

Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996).  See also
Robles v. Superintendent of Elmira Fac., 07 Civ. 596 (LBS), 2007
WL 2600857 at *3 n.3 (S.D.N.Y. Aug. 30, 2007) (Sand, D.J.);
Ashley v. Burge, 05 Civ. 4497 (JGK), 2006 WL 3327589 at *5 n.5
(S.D.N.Y. Nov. 3, 2006) (Koeltl, D.J.).

However, even where the last reasoned decision of the
state court expressly rejects a federal constitutional claim on a
state procedural ground, federal habeas corpus review will not be
precluded if (1) the state procedural ground is not independent
and adequate, see Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir.
2006); Monroe v. Kuhlman, 433 F.3d 236, 241-42 (2d Cir. 2006);
Cotto v. Herbert, supra, 331 F.3d at 238-39; (2) there is cause
for and prejudice from petitioner's failure to assert his claims
in accordance with state procedural law, or (3) a failure to

21

consider the claim would result in a fundamental miscarriage of justice.  Schlup v. Delo, 513 U.S. 298, 324-27 (1995); Coleman v. Thompson, supra, 501 U.S. at 748-50; Harris v. Reed, 489 U.S. 255, 262 (1989); Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005).  To establish a fundamental miscarriage of justice, a habeas petitioner must show that a constitutional violation probably resulted in his conviction despite his actual innocence.  United States v. Olano, 507 U.S. 725, 736 (1993) ("In our collat-eral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003) ([A] "habeas petitioner may avoid [a procedural] default . . . by showing . . . that failure to consider the claim will result in miscarriage of justice, i.e., the petitioner is actually innocent.").

    2.  Application of the
       Foregoing Principles
       to the Facts of this Case

      (1)  Petitioner's Claim Concerning
         the Admissibility of Detective
         Perez's Testimony is Procedurally Barred

      Application of the foregoing principles demonstrates that petitioner's constitutional claim concerning the admissibility of Detective Perez's testimony is procedurally barred.

22

Though respondent does not address it, a threshold
issue is whether petitioner's constitutional claim was adequately
presented in state court.  See e.g. Dangler on Behalf of Dangler
v. Yorktown Cent. Schools, 771 F. Supp. 625, 628 (S.D.N.Y. 1991)
(the Court may address issues that the parties have not explic-
itly raised).  The Petition cites the Sixth and Fourteenth
Amendments in support of petitioner's claim that the Trial Court
improperly permitted Detective Perez to testify as both a fact
and expert witness, but petitioner cited no such constitutional
authority in his state court submissions (Petition at 13; Appel-
lant's Br. at 21-30; First Appl. to Appeal at 1-2; Second Appl.
to Appeal at 1-2).  A constitutional claim can, nevertheless,
still be deemed exhausted if "in state court the nature or
presentation of the claim [was] likely to alert the court to the
claim's federal nature."  Daye v. Attorney Gen., supra, 696 F.2d
at 192.

On direct appeal to the Appellate Division, petitioner
argued generally that "Appellant was denied his due process right
to a fair trial by the dual role testimony of Detective Perez and
his co-case officers" (Appellant's Br. at 29).  While a broad
claim that a criminal defendant was denied a "fair trial" is
usually insufficient to exhaust a federal claim, Daye v. Attorney
Gen., supra, 696 F.2d at 193, petitioner also specified that

23

Perez's testimony encroached upon the fact-finding role of the jury (Appellate Br. at 21-22, 24, 27-28).  Because protection of the jury's fact-finding role has often been linked to the Sixth Amendment, petitioner's characterization of his claim should have alerted the state courts to the claim's constitutional nature. See e.g. United States v. Canania, 532 F.3d 764, 777 (8th Cir. 2008); United States v. Sabetta, 373 F.3d 75, 80 (1st Cir. 2004). Indeed, the Appellate Division recognized in its decision that petitioner was asserting "constitutional claims regarding the admission of the expert testimony." People v. Contreras, supra, 28 A.D.3d at 394, 816 N.Y.S.2d at 12.  In addition, petitioner's brief to the Appellate Division relied heavily on United States v. Dukagjini, 326 F.3d 45, 57-61 (2d Cir. 2003), a federal case at least partially employing constitutional analysis (Appellant's Br. at 23-25, 28-29).

        Petitioner also asserted this claim in his application for leave to appeal to the New York Court of Appeals (First Appl. to Appeal at 1-2).  Thus, because petitioner asserted this claim in constitutional terms and asserted it in all appeals available to him, he has exhausted this claim.

        Although petitioner's claim was properly exhausted, it is still procedurally barred from habeas review because it was

rejected by the Appellate Division on independent procedural
state grounds.

In this case, the Appellate Division, the last state
court to render a reasoned decision, held that petitioner's
"constitutional claim[] regarding the admission of the expert
testimony . . . [was] unpreserved" and that "[w]ere we to review
[this] claim[], we would reject [it]." People v. Contreras,
supra, 28 A.D.3d at 394, 816 N.Y.S.2d at 12.  See Jones v.
Stinson, supra, 229 F.3d at 118, quoting Harris v. Reed, supra,
489 U.S. at 263.  Although the Appellate Division did not iden-
tify the specific statutory basis for its decision, it appears
that petitioner's claim was procedurally barred because peti-
tioner's trial counsel failed to make contemporaneous objections
to Perez's testimony during trial as required by New York Crimi-
nal Procedure Law Section 470.05(2)[2] (Respondent's Appellate

---

[2]New York Criminal Procedure Law Section 470.05(2) provides:

> For purposes of appeal, a question of law with respect
> to a ruling or instruction of a criminal court during a
> trial or proceeding is presented when a protest thereto
> was registered, by the party claiming error, at the
> time of such ruling or instruction or at any subsequent
> time when the court had an opportunity of effectively
> changing the same.  Such protest need not be in the
> form of an "exception" but is sufficient if the party
> made his position with respect to the ruling or
> instruction known to the court, or if in reponse [sic]
> to a protest by a party, the court expressly decided
>                                        (continued...)

Division Brief, dated August 2005, attached to Decl. in Opp'n as Ex. B ("Resp't Appellate Br."), at 47, 50, 52, 56-58, 60-63).

Petitioner could overcome this procedural bar by demonstrating either (1) cause for and prejudice from petitioner's failure to assert his claim in accordance with state procedural law or (2) that a failure to consider the claim would result in a fundamental miscarriage of justice. Schlup v. Delo, supra, 513 U.S. at 324-27; Coleman v. Thompson, supra, 501 U.S. at 748-50; Harris v. Reed, supra, 489 U.S. at 262; Green v. Travis, supra, 414 F.3d at 294.  Petitioner has not, however, even attempted to meet either standard.

--------

[2](...continued)
> the question raised on appeal.  In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

There can be no question that a failure to comply with New York's contemporaneous objection rule with respect to the admission of evidence constitutes an adequate and independent state ground that will preclude federal habeas relief. Quinnones v. Ercole, 310 F. App'x 434, 436 (2d Cir. 2009); Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007); Garvey v. Duncan, 485 F.3d 709, 715 (2d Cir. 2007); Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 1999).  But see Monroe v. Kuhlman, 433 F.3d 236 (2d Cir. 2006) (contemporaneous objection rule not firmly established and regularly followed with respect to judicial supervision claim).

Because petitioner has not overcome the procedural bar to consideration of his claim concerning Perez's testimony, the claim must be rejected.[3]

> (2)   Petitioner's Claims Concerning Counsel's
>        Conflict of Interest and the Exclusion of
>        the Mendoza Affidavit Are Procedurally Barred

Petitioner claims that his right to conflict-free counsel, guaranteed by Sixth and Fourteenth Amendments, was violated because "the Contreras brothers were represented by lawyers who were not only related as mother and son, but they

---

[3]Even if petitioner's claim were not procedurally barred, it is without merit.  The Second Circuit has found

> "[T]he decision of whether to admit expert testimony is left to the discretion of the trial judge and should not be set aside unless manifestly erroneous."  United States v. Feliciano, 223 F.3d 102, 120 (2d Cir. 2000) (citation and internal quotation marks omitted).  A witness offering so-called dual testimony, testifying as both an expert and as a fact witness, is "not objectionable in principle."  Id. at 121.  Our review is focused on the impact of such testimony on the jury. Although a law enforcement officer cannot draw a legal conclusion for the jury or tell them how to weigh particular evidence, officer witnesses can "make conclusory statements, based on their experience, that the defendant was involved in drug-related activity." United States v. Cruz, 363 F.3d 187, 193 (2d Cir. 2004) (internal quotation marks omitted).

United States v. Faison, No. 09-1519-cr, 2010 WL 3548847 at *3 (2d Cir. September 14, 2010).  Therefore, Perez's testimony was proper and did not violate petitioner's constitutional rights.

also shared the same law suite, the same assistants, and the same co-counsel" (Petition at 16, citing Wood v. Georgia, 450 U.S. 261, 271 (1981)).  He further argues that the Trial Court failed to conduct a "thorough inspection of the potential conflicts and competing interests in their representations" (Petition at 16).

Petitioner also claims that his Sixth and Fourteenth Amendment rights were again violated by the Trial Court's refusal to admit the affidavit of Luis Mendoza (Petition at 20).  Petitioner maintains that Mendoza, who invoked the Fifth Amendment when called to testify, had executed an affidavit in which he took "responsibility for the possession of the 113 kilograms of cocaine found in the red Buick" (Petition at 20).  Petitioner argues that the Trial Court's exclusion of this affidavit deprived him of his constitutional right to present a full defense (Petition at 20, citing United States v. Bifield, 702 F.2d 342, 350 (2d Cir. 1983)).

Petitioner has failed to exhaust these claims because he has not asserted them in all appeals available to him.  Though he raised both claims before the Appellate Division, he did not assert them in his application for leave to appeal to the New York Court of Appeals.

In Galdamez v. Keane, 394 F.3d 68 (2d Cir. 2005), the Court of Appeals addressed the circumstances under which attach-

28

ing a defendant's brief to the Appellate Division to an applica-
tion for leave to appeal to the New York Court of Appeals will
exhaust all claims asserted before the Appellate Division.  In
Galdamez, the defendant sent the New York Court of Appeals all of
the briefs submitted to the Appellate Division, along with a
cover letter requesting leave to appeal, without highlighting any
particular issues.  Galdamez v. Keane, supra, 394 F.3d at 70-71.
The New York Court of Appeals subsequently denied leave to appeal
without articulating any reasoning.  Despite the brevity of both
defendant's application and the New York Court of Appeals'
decision, the Galdamez court held

> that where a habeas petitioner (1) submits to the New
> York Court of Appeals his or her Appellate Division
> briefs and a letter application seeking leave to appeal
> that did not identify particular issues for the court's
> review, and (2) leave to appeal was denied by the New
> York Court of Appeals without stating that the denial
> was due to petitioner's failure to identify particular
> issues for review, then a habeas petitioner has prop-
> erly exhausted his or her federal claims pursuant to §
> 2254.

Galdamez v. Keane, supra, 394 F.3d at 70.  See also Natal v.
Bennett, 98 Civ. 1872 (RWS), 1998 WL 841480 at *4-5 (S.D.N.Y.
Dec. 3, 1998) (Sweet, D.J.); Manning v. Artuz, 94-CV-3325 (SJ),
1996 WL 294359 at *3-4 (E.D.N.Y. May 29, 1996).

In reaching this result, the court also noted that,
subject to certain exceptions, when a criminal defendant includes

his appellate briefs with his application for leave to appeal, but submits a cover letter that singles out fewer than all the claims asserted to the Appellate Division, the defendant will be found to have abandoned the unasserted claims.[4] Galdamez v. Keane, supra, 394 F.3d at 74; see also Grey v. Hoke, supra, 933 F.2d at 120 ("We decline to presume that the New York Court of Appeals has a duty to look for a needle in a paper haystack.") (internal quotations and citations omitted); Oquendo v. Senkowski, 452 F. Supp. 2d 359, 367 (S.D.N.Y. 2006) (Holwell, D.J.) ("When a petitioner's appeal application letter mentions some of his claims while an attached brief details other[s], the claims not mentioned in the application letter are not fairly presented."). Because petitioner's first application for leave to appeal in this case singled out only his claim regarding Perez's testimony, and his second application raised only his ineffective-assistance-of-appellate-counsel claim, petitioner's

---

[4]The Court in Galdamez noted that there may also be an exception  when a defendant submits multiple letters seeking leave to appeal.  If an initial letter seeking leave expressly requests review of all claims asserted before the Appellate Division, a subsequent letter highlighting particular claims will not be interpreted as abandoning those claims which were not highlighted.  Galdamez v. Keane, supra, 394 F.3d at 75, discussing Morgan v. Bennett, 204 F.3d 360 (2d Cir. 2000). Because petitioner's letters were not submitted in this manner, this exception is inapplicable to the present case.

attachment of his appellate brief to these applications does not fairly present the other claims mentioned therein.

Petitioner argues that the "prominent point headings" in his appellate brief alerted the Court of Appeals to all of the claims stated therein, therefore, they were incorporated by reference[5] (Traverse in Return, dated April 3, 2008 (undocketed), ("Traverse") at 2, 4-5).  He argues that his case is more analogous to Melendez v. Scully, No. CV 91-2497 (RR), 1993 WL 41769 at *4 (E.D.N.Y. February 10, 1993), and Morales v. Miller, 41 F. Supp. 2d 364, 373-75 (E.D.N.Y. 1999), in which criminal defendants discussed one claim in detail in their applications to the Court of Appeals, while making specific reference to others contained in the attached appellate briefs.  In Melendez, however, the defendant's application for leave to appeal stated "'we rely on our brief [to the Appellate Division] with regard to the

---

[5]Petitioner cites Morales to support his claim that the prominent point headings in his Appellate Brief were sufficient to incorporate all of his claims by reference (Traverse at 4). However, the Court in Morales held only that when a brief is otherwise incorporated by reference, point headings which refer to a constitutional provision may alert the Court to the fact that constitutional claims are being asserted.  Morales v. Miller, supra, 41 F. Supp. 2d at 375-76.  This holding does not support petitioner's claim that because his Appellate Brief contained prominent point headings, all claims mentioned therein should be deemed incorporated by reference.  Indeed, because point headings in a brief are almost always prominent, petitioner's argument, if accepted, would eliminate the rule set forth in Galdamez.

remaining issues in the case.  I would be glad to expand on any of these points in an oral hearing if Your Honor believes that one would be helpful.'"  Melendez v. Scully, supra, 1993 WL 41769 at *4.  Similarly, the defendant in Morales stated "'appellant requests that the Court of Appeals consider and review all of the issues outlined in defendant-appellant's brief . . . .'"  Morales v. Miller, supra, 41 F. Supp. 2d at 373.  In both cases, the Court held that the defendants' express assertion of the other claims in the appellate briefs served to exhaust those claims. Melendez v. Scully, supra, 1993 WL 41769 at *4; Morales v. Miller, supra, 41 F. Supp. 2d at 374-75.

Petitioner here made no such explicit reference to the other claims in his briefs.  His first application for leave to appeal stated only "[i]n support of this application he relies on the briefs he filed in the Appellate Division" (First Appl. to Appeal at 3) (emphasis added).  Similarly, petitioner's Second Application to Appeal stated that he "respectfully urges this Court to consider the arguments raised in Points I & II" of his Coram Nobis Application (Second Appl. to Appeal at 2).  Those sections discussed only his claims concerning his ineffective assistance of appellate counsel and the lack of sufficient evidence against him at trial (Coram Nobis Appl. at I).  This language is not analogous to the specific references to the

32

remaining claims in <u>Melendez</u> and <u>Morales</u> and, therefore, does not have the same effect.

Thus, petitioner's claims concerning his counsel's conflict of interest, as well as those concerning the Mendoza affidavit, are unexhausted. See <u>Smith v. Duncan</u>, 411 F.3d 340, 345 (2d Cir. 2005) ("Generally we assume that the [New York] Court of Appeals would construe a petitioner's leave application as abandoning claims that the petitioner had pressed to the Appellate Division below where those claims were not presented to the New York high court for review.") (internal quotations and citations omitted). See also <u>Gillespie v. Miller</u>, 04 Civ. 295 (LAP)(AJP), 2004 WL 1689735 at *11 & n.23 (S.D.N.Y. July 29, 2004) (collecting cases) (Peck, M.J.); <u>Blue v. Duncan</u>, 03 Civ. 1202 (LTS)(GWG), 2004 WL 1172793 at *6-7 (S.D.N.Y. May 27, 2004) (Gorenstein, M.J.); <u>Hincapie v. Greiner</u>, 155 F. Supp. 2d 66, 68 (S.D.N.Y. 2001) (Cedarbaum, D.J.); <u>Snead v. Artuz</u>, 99 Civ. 2406 (DC), 2001 WL 199409 at *3-4 (S.D.N.Y. Feb. 28, 2001) (Chin, D.J.).

Because petitioner no longer has any remedy available in state court, these claims must be deemed exhausted but proce-durally barred. As the Court of Appeals for the Second Circuit explained in <u>Spence v. Superintendent, Great Meadow Corr. Fac.</u>, 219 F.3d 162, 170 (2d Cir. 2000):

33

> New York permits only one application for direct re-
> view, see N.Y. Rules of Court, Court of Appeals, §
> 500.10(a) (McKinney 1999), and having failed to raise
> the claim on direct appeal [petitioner] may not seek
> collateral relief in New York courts, see N.Y. Crim.
> Proc. Law. § 440.10(2)(c) (McKinney 1994); Strogov v.
> Attorney Gen., 191 F.3d 188, 193 (2d Cir. 1999); Wash-
> ington, 996 F.2d at 1447; Grey, 933 F.2d at 120.
> Because [petitioner] failed to raise his claim in the
> ordinary appellate process and can no longer do so, it
> is procedurally defaulted.

See also Jones v. Keane, 329 F.3d 290, 296 (2d Cir. 2003);

Aparicio v. Artuz, supra, 269 F.3d at 90-91; Black v. McGinnis,

99 Civ. 0755 (MBM), 2001 WL 209916 at *4 (S.D.N.Y. Mar. 1, 2001)

(Mukasey, D.J.).

As noted above, petitioner could theoretically overcome

this procedural bar by demonstrating either (1) cause for and

prejudice from petitioner's failure to assert his claims in

accordance with state procedural law or (2) that a failure to

consider the claim would result in a fundamental miscarriage of

justice. Schlup v. Delo, supra, 513 U.S. at 324-27; Coleman v.

Thompson, supra, 501 U.S. at 748-50; Harris v. Reed, supra, 489

at 262; Green v. Travis, supra, 414 F.3d at 294. Petitioner has

not, however, attempted to meet either standard.

B.  The Merits of Petitioner's
    Ineffective Assistance
    of Appellate Counsel Claim

Petitioner also contends that his Sixth and Fourteenth
Amendment rights were violated because "appellate counsel ren-
dered ineffective assistance on appeal, when counsel failed to
challenge the legal insufficiency of the People's evidence, thus,
establishing Petitioner's guilt beyond a reasonable doubt"
(Petition at 24).  Specifically, petitioner argues that evidence
against petitioner at trial was circumstantial because it was
based entirely on wiretaps and surveillance by police investiga-
tors, there was no evidence that petitioner or co-defendants ever
possessed drugs or used the word "cocaine," and no co-defendants
testified against or implicated petitioner (Petition at 24-25).
Petitioner claims that because appellate counsel was aware of the
evidence offered against petitioner, and knew of the aforemen-
tioned claims regarding Perez's testimony and Mendoza's affida-
vit, he should have challenged the sufficiency of the prosecu-
tion's evidence (Petition at 25).  Because petitioner explicitly
asserted this claim on constitutional grounds in his Coram Nobis
Application, as well as in his Second Application to Appeal, this
claim was properly exhausted (Coram Nobis Appl. at 3; Second
Appl. to Appeal at 1).

35

1.  Standard of Review
    for Exhausted Claims

A habeas petitioner must meet a stringent standard
before a federal court can issue the writ.  Specifically, habeas
relief may be granted only when the state court's decision
"resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States."  28 U.S.C.
§ 2254(d)(1); see Gueits v. Kirkpatrick, 612 F.3d 118, 122 (2d
Cir. 2010); Dolphy v. Mantello, 552 F.3d 236, 238 (2d Cir. 2009).

The Supreme Court has explained these alternative
standards as follows:

> First, we have explained that a decision by a
> state court is "contrary to" our clearly established
> law if it "applies a rule that contradicts the govern-
> ing law set forth in our cases" or if it "confronts a
> set of facts that are materially indistinguishable from
> a decision of this Court and nevertheless arrives at a
> result different from our precedent."  Williams v.
> Taylor, 529 U.S. 362, 405-06 (2000).  See also Early v.
> Packer, 537 U.S. 3, 7-8 (2002) (per curiam). . . .

> Second, [petitioner] can satisfy § 2254(d) if he
> can demonstrate that the [State] Court's decision
> involved an "unreasonable application" of clearly
> established law.  As we have explained:

> "[A] federal habeas court may not issue the writ
> simply because that court concludes in its independent
> judgment that the state-court decision applied [a
> Supreme Court case] incorrectly.  See Bell v. Cone, 535
> U.S. 685, 698-699 (2002); Williams, supra, at 411.
> Rather, it is the habeas applicant's burden to show

> that the state court applied [that case] to the facts
> of his case in an objectively unreasonable manner."
> Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (per
> curiam).

Price v. Vincent, 538 U.S. 634, 640-41 (2003); accord Waddington
v. Sarausad, --- U.S. ---, ---, 129 S.Ct. 823, 831 (2009); Brown
v. Payton, 544 U.S. 133, 141 (2005); see also Lockyer v. Andrade,
538 U.S. 63, 70-72 (2003); Bierenbaum v. Graham, supra, 607 F.3d
at 47-48; Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir.
2006); Hawkins v. Costello, 460 F.3d 238, 242-43 (2d Cir. 2006);
Brown v. Artuz, 283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable applica-
tion" set forth above, a state court may unreasonably apply
Supreme Court precedent "if the state court unreasonably extends
a legal rule established by the Supreme Court or if it unreason-
ably fails to extend a legal rule to a context in which the rule
reasonably should apply." Serrano v. Fischer, 412 F.3d 292, 296-
97 (2d Cir. 2005). "Unreasonableness is determined by an 'objec-
tive' standard." Gersten v. Senkowski, 426 F.3d 588, 607 (2d
Cir. 2005), quoting Williams v. Taylor, 529 U.S. 362, 409 (2000);
Hawkins v. Costello, supra, 460 F.3d at 242-43.

Both the "contrary to" and "unreasonable application"
clauses "restrict[] the source of clearly established law to [the
Supreme] Court's jurisprudence." Williams v. Taylor, supra, 529

37

U.S. at 412.  "[C]learly established [f]ederal law . . . refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (internal quotations omitted); accord Thaler v. Haynes, 130 S.Ct. 1171, 1173 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court.").  "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002); accord Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 129 S.Ct. 1312 (2009).  "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d 104, 110 (2d Cir. 2003); accord DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002).

     A ruling that is clearly erroneous is not necessarily a ruling that constitutes an unreasonable application of federal law.  Lockyer v. Andrade, supra, 538 U.S. at 75 (The "objectively unreasonable" and "clear error" standards "are not the same.  The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonable-

ness."); Davis v. Grant, supra, 532 F.3d at 140; Cotto v. Herbert, supra, 331 F.3d at 248.  However, "'the increment [of error beyond clear error] need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"  Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009), cert. denied, 130 S.Ct. 739 (2009), quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

To be entitled to the deferential standard of review under either sub-paragraph of subsection 2254(d), the state courts must have resolved the petitioner's claims "on the merits."  Cotto v. Herbert, supra, 331 F.3d at 230; see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002) ("[I]n order for this deferential standard of § 2254 to apply, we must first determine that the state court considered [petitioner's claim] on its merits."); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).

The Second Circuit has instructed habeas courts to "classify" a state court decision as either:  (1) "fairly appearing to rest primarily on federal law or to be interwoven with federal law"; or (2) "fairly appearing to rest primarily on state procedural law."  Jimenez v. Walker, supra, 458 F.3d at 145.  "If the state court's decision falls into the first category, and does not 'contain a clear statement of reliance on a state

procedural bar,' the decision must be treated as having been made on the merits." Mateo v. Fishkill Corr. Fac., 04 Civ. 3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007), quoting Jimenez v. Walker, supra, 458 F.3d at 138. To make this classi-fication, habeas courts in this circuit examine "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." Jimenez v. Walker, supra, 458 F.3d at 145 n.16.

In this case, the state courts resolved petitioner's ineffective assistance of appellate counsel claim on the merits. Petitioner asserted this claim in his Coram Nobis Application, which the Appellate Division denied without any mention of a procedural issue. Moreover, the prosecution's opposition to the petition did not remotely suggest any procedural defect. Accord-ingly, the state court's decision constitutes a decision on the merits and petitioner's claim is entitled to the deferential AEDPA standard of review. Herrera v. Senkowski, 77 F. App'x 549, 551 (2d Cir. 2003); Aparicio v. Artuz, supra, 269 F.3d at 92-94 (denial of claims without opinion but without indicating that denial was on procedural grounds is adjudication on the merits); see Sellan v. Kuhlman, supra, 261 F.3d at 311 ("Nothing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process.").

2.  Legal Standards Applicable to
    Petitioner's Claim

In order to prevail on an ineffective assistance of
counsel claim, a habeas petitioner must meet the now-familiar,
two-part test set forth in Strickland v. Washington, 466 U.S.
668, 686-87 (1984).

> The benchmark for judging any claim of ineffectiveness
> must be whether counsel's conduct so undermined the
> proper functioning of the adversarial process that the
> trial cannot be relied on as having produced a just
> result.
>
>         *     *     *
>
> A convicted defendant's claim that counsel's
> assistance was so defective as to require reversal of a
> conviction . . . has two components.  First, the defen-
> dant must show that counsel's performance was defi-
> cient.  This requires showing that counsel made errors
> so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth Amend-
> ment.  Second, the defendant must show that the defi-
> cient performance prejudiced the defense.  This re-
> quires showing that counsel's errors were so serious
> as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  Unless a defendant makes both
> showings, it cannot be said that the conviction . . .
> resulted from a breakdown in the adversary process that
> renders the result unreliable.

Accord Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid
v. Bennett, 296 F.3d 58, 62-63 (2d Cir. 2002); Hernandez v.
United States, 202 F.3d 486, 488 (2d Cir. 2000); Guerrero v.
United States, 186 F.3d 275, 281-82 (2d Cir. 1999); McKee v.
United States, 167 F.3d 103, 106-07 (2d Cir. 1999); Jackson v.

Leonardo, 162 F.3d 81, 84-85 (2d Cir. 1998).  This same standard
applies to claims of ineffective assistance of appellate counsel.
Mercer v. Herbert, 133 F. Supp. 2d 219, 238 (W.D.N.Y. 2001) ("A
claim for ineffective assistance of appellate counsel is evalu-
ated upon the same standard as is a claim of ineffective assis-
tance of trial counsel.").  See also Mayo v. Henderson, 13 F.3d
528, 533 (2d Cir. 1994); Hernandez v. Edwards, 98 Civ. 6704
(MBM), 2001 WL 575594 at *4 (S.D.N.Y. May 29, 2001) (Mukasey,
D.J.).

In determining whether counsel's performance was
objectively deficient, courts "must indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable
professional assistance; that is, the [petitioner] must overcome
the presumption that, under the circumstances, the challenged
action might be considered sound trial strategy." Strickland v.
Washington, supra, 466 U.S. at 689 (internal quotation marks
omitted).

In the appellate context, "it does not suffice 'for the
habeas petitioner to show merely that counsel omitted a nonfriv-
olous argument.'" McKee v. United States, supra, 167 F.3d at
106, quoting Mayo v. Henderson, supra, 13 F.3d at 533.  "Rather,
it is the hallmark of effective appellate advocacy to choose
wisely which claims are brought on appeal." Fletcher v. Mann,

42

956 F. Supp. 168, 173 (N.D.N.Y. 1997) (internal quotation marks omitted).  Thus,

> [i]n assessing the reasonableness of the arguments
> posed on appeal versus other possible nonfrivolous
> arguments, the district court must examine the trial
> court record to determine whether appellate counsel
> failed to present significant and obvious issues on
> appeal. . . .  Generally, only when ignored issues "are
> clearly stronger than those presented, will the pre-
> sumption of effective assistance of counsel be over-
> come."

Larrabee v. Smith, 14 F. Supp. 2d 235, 239 (N.D.N.Y. 1998),

quoting Mayo v. Henderson, supra, 13 F.3d at 533; see Torres v.

Irvin, 33 F. Supp. 2d at 257, 266 (S.D.N.Y. 1998) (Cote, D.J.).

Because the test is conjunctive, a habeas petitioner's

failure to satisfy either prong requires that the challenge to

the conviction be rejected.  Strickland v. Washington, supra, 466

U.S. at 697.

> 3.   Application of the Foregoing
>      Principles to Petitioner's Claim

Petitioner's request for habeas relief based on appel-

late counsel's failure to challenge the legal sufficiency of the

prosecution's evidence is clearly without merit and must be

denied.  "The standard for reviewing the legal sufficiency of

evidence in a criminal case is whether 'after viewing the evi-

dence in the light most favorable to the prosecution, any ratio-

nal trier of fact could have found the essential elements of the crime beyond a reasonable doubt." People v. Contes, 60 N.Y.2d 620, 621, 454 N.E.2d 932, 932-33, 467 N.Y.S.2d 349, 349-50 (1983), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under this "rigorous standard," Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994), "all possible inferences that may be drawn from the evidence must be construed in the prosecution's favor." Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996), citing United States v. Rosa, 11 F.3d 315, 337 (2d Cir. 1993). Further, "[a]ssessments of the weight of the evidence or the credibility of the witnesses are for the jury and are not grounds for reversal"; habeas courts must defer to the jury's assessment of both these issues. Maldonado v. Scully, supra, 86 F.3d at 35, citing United States v. Rosa, supra, 11 F.3d at 337. A "federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson v. Virginia, supra, 443 U.S. at 326. Finally, a petitioner's conviction will stand unless the record is "so totally devoid of evidentiary support that a due process issue is raised." Bossett v. Walker, 41 F.3d 825, 830

(2d Cir. 1994), quoting Mapp v. Warden, 531 F.2d 1167, 1173 n.8
(2d Cir. 1976).

A federal court reviewing a state prisoner's habeas
corpus petition involving a claim of insufficiency of the evi-
dence must look to state law to determine the elements of the
offense in issue.  See Jackson v. Virginia, surpa, 443 U.S. at
324 n.16; Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002).
In this case, petitioner was convicted of criminal possession of
a controlled substance in the first and third degrees, as well as
conspiracy in the second degree.  A person is guilty of criminal
possession of a controlled substance in the first degree when "he
or she knowingly and unlawfully possesses . . . one or more
preparations, compounds, mixtures or substances containing a
narcotic drug and said preparations, compounds, mixtures or
substances are of an aggregate weight of eight ounces or
more . . . ."  N.Y. Penal L. § 220.21(1).  A person is guilty of
criminal possession of a controlled substance in the third degree
when "he knowingly and unlawfully possesses . . . a narcotic drug
with intent to sell it . . . ."  N.Y. Penal L. § 220.16(1).
Finally, a person is guilty of conspiracy in the second degree
when "with intent that conduct constituting a class A felony be
performed, he agrees with one or more persons to engage in or
cause the performance of such conduct."  N.Y. Penal L. § 105.15.

45

Criminal possession of a controlled substance in the first degree is a class A felony.  N.Y. Penal L. § 220.21(1).

The prosecution's evidence at trial was legally suffi-cient to establish the essential elements of each of these offenses.  As set forth in Section II.A above, Task Force offi-cers monitored petitioner's communications for several months prior to his arrest.  These officers, having extensive experience in drug trafficking activity, decoded conversations in which petitioner and his associates arranged illegal narcotics transac-tions.  Specifically, the officers testified that petitioner arranged to transfer money to suppliers in Venezuela in a way that would evade federal reporting requirements (Tr. at 517-29, 531-33, 535-39, 566-86).  Officers also testified that petitioner made arrangements for his associate, Peguero, to deliver $707,000 and a money counting machine to cocaine suppliers in Miami in exchange for one hundred and thirteen kilograms of cocaine (Tr. at 611-12, 615, 620-27, 637-43, 646-48, 653-55, 660-65, 669-70, 672-77, 1445).  The officers also gave testimony that petitioner was in constant contact with those involved in these exchanges and often provided directions (Tr. at 773-76, 780-84, 971-87).

Evidence recovered at the time of petitioner's arrest further corroborated the officers' testimony.  Petitioner was arrested while driving with those suspected of supplying his

cocaine (Tr. at 657, 732-33, 743-44, 761-770, 1000-04, 1025-26, 1038-39, 1050-51).  Police recovered incriminating evidence from petitioner's vehicle, including business cards bearing the contact information of those involved in the narcotics organization, a notebook containing similar information (Tr. at 1042-46, 1278-79, 1284-92, 1407-19, 1447-48, 1511-2, 1621-22), and $20,000 in cash in a plastic bag under petitioner's driver's seat (Tr. at 1004, 1007-08, 1024, 1052-53).

Evidence recovered at the Universal Parking Garage also corroborated the testimony of the Task Force officers.  Inside two cars stored in petitioner's garage, police recovered a total of one hundred and fifteen kilograms (approximately two hundred and fifty pounds) of cocaine, three guns, ammunition and a digital scale (Tr. at 1140-42, 1148, 1163-65, 1170-71, 1203-05, 1212, 1350-51).  Officers also discovered that the closet in the garage had a "trap" floor (Tr. at 1096-98, 1266-67), and that a drawer in the office desk contained an electronic money counter and what officers interpreted to be records of drug transactions (Tr. at 1240-44, 1473-1521, 1602-05).

Petitioner's defense at trial cannot negate the inferences that naturally flow from the prosecution's evidence.  His attempt to refute this evidence was limited to his own testimony that, to the extent he recalled the intercepted calls and the

actions of his associates, they related only to his auto supply
business (Tr. at 1812-15, 1844-48, 1858, 1871-79, 1882-88, 1893-
1907).  He claimed to have no memory at all of some calls (Tr. at
1835, 1843-48, 1851, 1859-60, 1880-81, 1891-93, 1916-17, 1919-
22).  His response to the physical evidence was simply that he
was unaware of any drug activity at the garage and that the
incriminating materials recovered there were not his (Tr. at
1814-15).  Viewing the evidence in the light most favorable to
the prosecution, petitioner cannot establish that "any rational
trier of fact could [not] have found the essential elements of
the crime beyond a reasonable doubt."  People v. Contes, supra,
60 N.Y.2d at 621, 454 N.E.2d at 932-33, 467 N.Y.S.2d at 349-50,
quoting Jackson v. Virginia, supra, 443 U.S. at 319.  Even if
petitioner's defense could cast some doubt on the prosecution's
evidence, all inconsistencies in the evidence must be resolved in
favor of the prosecution and do not establish the absence of any
element of the offenses petitioner was convicted of.  Peti-
tioner's present claims concerning the allegedly circumstantial
nature of the evidence, as well as the negative effects of
Perez's testimony and Mendoza's excluded affidavit, do not
disprove that a rational finder of fact could have found him
guilty based on the prosecution's evidence.  In fact, both direct
and circumstantial evidence must be given equal weight when

48

evaluated by a jury.  See e.g. Holland v. United States, 348 U.S. 121, 139-40 (1954); United States v. Guadagna, 183 F.3d 122, 130-32 (2d Cir. 1999); United States v. Curry, 187 F.3d 762, 767-68 (7th Cir. 1999); United States v. Battista, 646 F.2d 237, 246 (6th Cir. 1981); United States v. Clements, 588 F.2d 1030, 1039 (5th Cir. 1979).

        Because petitioner has failed to show a basis upon which appellate counsel could have secured a reversal of his conviction based on the legal insufficiency of the evidence, he cannot satisfy the Strickland standard to prove the ineffective-ness of his counsel.  "Counsel is not obliged to advance every nonfrivolous argument that could be made" on appeal.  Aparicio v. Artuz, supra, 269 F.3d at 95, citing Evitts v. Lucey, 469 U.S. 387, 394 (1985); see also Jones v. Barnes, 463 U.S. 745, 754 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.").  Petitioner cannot show that a challenge based on the alleged insufficiency of the evidence would have constituted a colorable claim, much less that it would have been a stronger claim than those actually asserted.  Therefore, appellate counsel

was not "deficient," as defined by <u>Strickland</u>, for declining to assert this claim.  Because petitioner's claim does not satisfy this first prong of <u>Strickland</u>, I need not address whether or not any prejudice resulted.

Having independently reviewed the entire state court record, I find nothing unreasonable in the state court's application of clearly established federal law, nor with the state's determination of facts in light of the evidence.  Thus, petitioner is not entitled to any relief on his claim that appellate counsel was ineffective based on counsel's failure to challenge the legal sufficiency of the evidence at trial.

IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respectfully recommend that the petition be denied in all respects.

In addition, because petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued.  28 U.S.C. § 2253.  To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  <u>Middleton v.</u>

Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam) (citation and internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam).  For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that petitioner's federal rights were not violated.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).

V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c)) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed. R. Civ. P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Deborah A. Batts, United States District Judge, 500 Pearl Street, Room 0186, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge

51

Batts.   FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT

IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.

Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male

Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension

Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v.

Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-238 (2d Cir. 1983).


Dated:   New York, New York
         January 5, 2011


                          Respectfully submitted,


                          _____
                          HENRY PITMAN
                          United States Magistrate Judge


Copies mailed to:

Mr. Cristino Contreras
00-A-4380
Fishkill Correctional Facility
271 Matteawan Road
P.O. Box 1245
Beacon, New York 12508

Jodi Danzig, Esq.
Assistant Attorney General
of the State of New York
120 Broadway
New York, New York 10271